[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
INTRODUCTION
This is an administrative appeal brought by an attorney, Roy H. Scharf (Scharf), from the issuance to him of a reprimand by the Statewide Grievance Committee (Committee) for violation of Rule 1.15(b) of the Rules of Professional Conduct (the Rule), which states:
 Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
 FACTS
The undisputed facts in this case are:
Scharf represented Nancy and Michael Reznik (collectively, the Rezniks) in the sale of a piece of real estate (the premises);
For a period of time, a real estate broker named William Bonfanti (Bonfanti) had an exclusive listing agreement with the Rezniks for the premises, which provided for a sales commission of 6%;
The Rezniks entered into a purchase and sale agreement which named Bonfanti as the listing broker and ERA Coastline Realty (Coastline) as the cooperating broker;
About three days before the date scheduled for the closing on the premises, one of the Rezniks gave the following directives to Scharf:
 a) Because of personal reasons and a possible legal reason, Scharf was not to pay anything CT Page 5565 from the sale proceeds (the proceeds) as a commission to Bonfanti;
 b) Scharf was to pay Coastline a commission from the proceeds; and,
 c) Scharf was not to tell Bonfanti the time or place of the closing;
Two days before the day scheduled for the closing, Bonfanti telephoned Scharf and inquired about the closing. Scharf advised Bonfanti that he would not be paid a commission;
One day before the scheduled closing, an attorney acting on behalf of Bonfanti sent Scharf a fax requesting payment of a commission to Bonfanti or, in the alternative, the establishment by Scharf, from the proceeds, of an escrow equal to the amount of the commission sought by Bonfanti;
The premises were sold for $195,000, and pursuant to his clients' instructions Scharf paid, from the proceeds, a commission to Coastline of approximately $8,700, which was approximately three-quarters of the commission provided for in the listing agreement between the Rezniks and Bonfanti, and, also pursuant to his clients' instructions, Scharf paid nothing from the proceeds to Bonfanti.
HISTORY
The Grievance Panel for the Judicial District of New Haven, Geographical Areas 7 and 8, investigated this matter and concluded that there was no probable cause that Scharf was guilty of misconduct.
A three person reviewing committee of the Committee voted to recommend that Scharf be reprimanded by the Committee for violation of the Rule, with one member of the reviewing committee dissenting. The Committee thereafter reprimanded Scharf.
DISCUSSION
The Rule deals with a lawyer's responsibility concerning CT Page 5566 "funds or other property in which a client or third person has an interest." The Comment to the Rule states:
 Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client, and accordingly may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party.
The question before the court, in the language of the Rule, is whether Bonfanti had an "interest" in the proceeds or, in the language of the Comment, a "just claim against" the proceeds. According to the Comment, whether Bonfanti had an "interest" in the proceeds depended on "applicable law"; that is, the law of Connecticut. Thus, the issue is whether Bonfanti had an "interest" in, or "just claim against", the proceeds under Connecticut law.
No authority has been cited by the defendant for the proposition that Bonfanti was something other than an unsecured creditor of the Rezniks whose claim had not yet been heard and determined. As an unsecured creditor, Bonfanti had a generalized interest in all of the assets of the Rezniks, as did other unsecured creditors, if any, of the Rezniks. However, unless such a creditor acquired a lien, security interest or prejudgment remedy in regard to a particular asset of the Rezniks, that creditor had no "interest" in, or "just claim against", that asset, and, therefore, no right to interfere with the unfettered disposition of that asset by the Rezniks.
If the rule were otherwise and Bonfanti, an unsecured creditor, had a right to prevent distribution of the proceeds, then so did a hypothetical pharmacist who claimed to have provided sundries to the Rezniks on an open account, a hypothetical newspaper delivery person who claimed to have brought the New York Times to the Rezniks' door and a hypothetical United Way which claimed to hold an unpaid pledge from the Rezniks.
Because our law would not permit any of such unsecured creditors to interfere with the distribution of the proceeds of the sale of real estate, "interest", as used in the Rule, is found not CT Page 5567 to cover the claim of an unsecured creditor. If this were not so, then any funds held by a lawyer for a client would become de facto security for all unsecured and unproven claims against the client, without affording to the client any of the protections an alleged debtor enjoys under our prejudgment remedy statutes.
The Committee, in its brief and argument, cites, as support for its position, the obligation of a lawyer representing a client in a personal injury matter to pay the claim of a medical provider who has a letter of protection from the lawyer, even if the client objects to such payment. However, that argument overlooks the fact that a lawyer cannot give a letter of protection to a medical provider without authorization from the client. Because granting the benefits of a letter of protection is a consensual matter for the client, and because a medical provider may rely to his or her detriment on a letter of protection, there are strong policy grounds for requiring a lawyer to respect a letter of protection, on pain of discipline.
However, none of those policy grounds is present in this case. Clearly, there was the opposite of consent by the Rezniks to the payment of Bonfanti; that is, they forbade it. Further, there could have been no reliance by Bonfanti on an assumption that he would be paid by Scharf from the proceeds, because Scharf advised Bonfanti that he would not be paid.
The Committee also cites the ethical obligation of an attorney not to distribute funds held by him or her to a client in violation of a court order or in disregard of a lien. Those situations are easily distinguishable from this case; a lawyer always has an ethical obligation to respect a court order; and, one holding a lien against funds or property held by a lawyer clearly has an "interest" in the funds or property, and therefore is within the scope of the Rule.
Also to be considered is the manner in which the proceeds came into Scharf's hands, and the restrictions, implied or express, on his distribution of them. The record is silent as to whether there was an express agreement, either written or oral, between the Rezniks and Scharf governing the distribution of the proceeds. If Scharf had held the proceeds under an express agreement, that agreement would have spelled out to whom he was to distribute the proceeds. Clearly, if such an agreement entrusted money of the Rezniks to him and directed him to pay all of it to the Rezniks and none to Bonfanti, then by the terms of that agreement, and by the CT Page 5568 terms of the Rule, Scharf would have been obligated to pay nothing to Bonfanti.
If there had been an express agreement, written or oral, between the Rezniks and Scharf, that agreement would certainly have been made known to the Committee. In the absence of anything in the record concerning an express agreement, it is presumed that there was no express agreement between the Rezniks and Scharf concerning the proceeds.
Lawyers routinely receive funds on behalf of clients without the benefit of express agreements governing their distribution. In such cases, lawyers serve as de facto escrow agents. However, the fact that such de facto escrow agreements are routine does not negate the fact that they are enforceable as to the escrow agent (the lawyer).
Because de facto escrow agreements are implied and not express, such agreements cannot have express terms governing the distribution of the escrow fund. Accordingly, an escrow agent must treat an escrow fund in the manner in which any other agent treats property of a principal. That is, an escrow agent must do with the fund whatever the principal (the client) directs, absent a legal obligation (i.e., lien or garnishment) to do otherwise.
Because it has already been found that there is no legal obligation on a lawyer to satisfy unsecured (and unproven) claims against a client out of funds of the client in the lawyer's hands, payment by Scharf of the Bonfanti claim would have been a breach of his de facto, enforceable escrow agreement with the Rezniks, and such a breach not only would have created a legal liability for Scharf, but also would have constituted a violation of the Rule by him.
If Scharf had been unwilling to respect the Rezniks' directive not to pay Bonfanti, it would have been his obligation to advise the Rezniks of his refusal before receiving the proceeds on their behalf, in order that the Rezniks not rely, to their detriment, on the permissible assumption that Scharf would comply with their directives. If Scharf had told the Rezniks that he interpreted the Rule to compel him to pay Bonfanti from the proceeds, the Rezniks could simply have advised Scharf that the proceeds were not to go through Scharf's hands, but rather were to be paid directly to them. Thus, it appears that Bonfanti would have been paid from the proceeds only if Scharf had been deceptive with his clients. CT Page 5569
From the fact that the Rezniks directed that Scharf pay a commission to Coastline (the cooperating broker), the Committee has inferred that Bonfanti had an "interest" in the proceeds. Under the analysis adopted above, the money in Scharf's hands belonged to the Rezniks, and they enjoyed the unfettered right to direct him to distribute it in any way they chose; that is, in satisfaction of their legal obligations, in satisfaction of disputed claims against them, to themselves or as gifts. In short, the Rezniks directive to pay Coastline does not support the inference that Bonfanti had an "interest" in the proceeds under Connecticut law.
The Committee relied upon Informal Opinion 92-29 of the Committee on Professional Ethics of the Connecticut Bar Association, which opines that an attorney representing a seller who directs that a real estate broker's commission not be paid from sale proceeds is obligated to escrow the amount of the disputed claim. While the Court has great respect for opinions of the Committee on Professional Ethics, in this case it declines to follow Informal Opinion 92-29, for the reasons stated above.
CONCLUSION
The appeal is sustained, and the reprimand issued by the Committee to Scharf is vacated.
George Levine, Judge